IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES GWATHNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 2:09-cv-479-MEF |
| ) | (WO – Publish) |
| CORRECTIONAL OFFICER WARREN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is again before the Court on Defendant's Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. #75), the Recommendation of the Magistrate Judge (Doc. #92), and Defendant's Objection to the Recommendation (Doc. #100).[1]  In support of his renewed motion, Defendant cites to the pleadings previously submitted and considered in this action and to several newly submitted exhibits, including excerpts from an April 18, 2012 deposition of Plaintiff.  After carefully considering the Recommendation, the arguments of the parties, the applicable law, and the record as a whole, the Court finds that Defendant's Objection to the Recommendation of the Magistrate Judge is due to be SUSTAINED and summary judgment is due to be GRANTED in favor of Defendant.

**I. INTRODUCTION**

Federal inmate Charles Gwathney ("Gwathney") filed this *Bivens* action[2] on May 22,

---

[1] On February 4, 2013, Plaintiff filed a Response to Defendant's Objection, which the Court has reviewed and considered.  (*See* Doc. #102.)

[2] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  A *Bivens* action is a suit for damages against a federal actor who, acting in his individual capacity under color of federal law, is alleged to have violated the plaintiff's constitutional rights.  *Id.* at 397.  The standards

2009 (Doc. #1), against Correctional Officer Roger Warren ("Warren") and various other federal prison officials in their official and individual capacities. Gwathney claimed, among other things, that Warren violated Gwathney's Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him during a pat-down search at the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery").

The defendants filed a Special Report (Doc. #20), which the United States Magistrate Judge construed as a motion for summary judgment. On August 31, 2011, the Magistrate Judge recommended the dismissal of all claims except the excessive force claim against Warren in his individual capacity. (*See* Recommendation of the Magistrate Judge, Doc. #37.) Overruling Warren's objections, the Court adopted the Magistrate Judge's Report and Recommendation on September 21, 2011. (Doc. #44.)

After the Court set this case for trial to begin on February 25, 2012 (Scheduling Order, Doc. #65), Warren filed a motion for leave to take Gwathney's deposition. The Court granted this motion, and Warren's counsel deposed Gwathney on April 18, 2012. On June 29, 2012, Warren filed a Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. #75), based on new evidence obtained during Gwathney's April 18, 2012 deposition. On January 8, 2013, the Magistrate Judge again recommended that Warren's motion for summary judgment be denied and that this case proceed to trial. (Doc. #92.) With the trial date quickly approaching, the Court ordered that the trial be continued to give the Court adequate time to review the merits of Warren's renewed motion, the Magistrate Judge's recommendation, Warren's objection, and Gwathney's response to the objection. (Doc. #101.)

---

of liability in *Bivens* actions are the same standards of liability under 42 U.S.C. § 1983. *See Butz v. Economou*, 438 U.S. 478, 504 (1978) ("[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.").

## II. JURISDICTION AND VENUE

Jurisdiction over this action is proper under 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III. FACTS

On Friday, May 16, 2008, Gwathney underwent surgery on his right shoulder to repair his rotator cuff. On Monday, May 19, 2008, between 1:15 and 1:30 p.m., Warren entered Gwathney's wing announcing that they were "going to shake [it] down," which Gwathney understood to mean that they were going to conduct a search of the wing. When Warren entered Gwathney's cubicle, Warren observed Gwathney rise from his bunk and turn his back towards Warren, and Warren then appeared to be placing his hand down the front of his pants. (Warren Decl. ¶ 3, Doc. # 75-3.)[3] Warren then advised Gwathney that he would need to conduct a pat-down search for contraband. Gwathney raised his left arm for the pat-down search while explaining to Warren that he could not raise his right arm because of his recent shoulder surgery. Gwathney maintains that he told Warren his paperwork documenting his surgery was on top of his locker along with his arm sling.

According to Gwathney, Warren began the pat-down by "hit[ting]" or "slamm[ing] his hands on [Gwathney's] shoulders, which immediately brought [Gwathney] to his knees due to horrific pain." (Doc. #1, ¶ 6; Gwathney Dep., Doc. #75-2, 152:6–8; 159:11–20.)[4] While Gwathney was on his knees, Gwathney claims that Warren said, "[O]h you still can't raise your arm, get into the bathroom and strip." (Doc. #1, ¶ 7.) Gwathney then stood up and went into the bathroom even though he was in "excruciating pain." (Doc. #1, ¶ 8; Doc. #75-

---

[3] Gwathney does not dispute this fact in any of his responses.

[4] Gwathney used the word "hit" to describe Warren's force in his deposition on April 18, 2012, but he also testified that he did not know whether Warren's hands were in a fist. (Doc. #75-2, 152:6–8; 157:17–19.)

3

2, 159:20–160:1.)  Once in the bathroom, Gwathney unbuttoned and removed his over-shirt, and dropped his pants around his feet for the strip search.  (Doc. #75-2, 160:9–15.)  When Gwathney began to pull his undershirt over his head, Warren noticed the bandage from the surgery on his shoulder and told Gwathney that he did not have to continue removing his undershirt, saying, "Oh, that's alright."  (Doc. #75-2, 160:15–161:6.)  Warren then allowed Gwathney to leave his cubicle without saying anything else to him, and Gwathney visited the medical wing to get relief for his shoulder pain.  (Doc. #75-2, 167:9–168:7.)

Physician Assistant Aaron McNeil ("PA McNeil") evaluated Gwathney immediately after the pat-down search and determined that Gwathney's shoulder pain was "secondary to recovery from recent right shoulder rotator cuff repair" and that it was "possib[ly] mildly aggravated by [the] pat search."  (Doc. #1-2.)  PA McNeil injected Gwathney with Toradol, a non-narcotic pain reliever, to relieve his pain.  (Doc. #1-2.)

## IV. LEGAL STANDARD

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A court should grant summary judgment when the pleadings and supporting materials show that no genuine dispute exists as to any material fact and that the moving party deserves judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To shoulder this burden, the moving party can present evidence to this effect.  *Id.* at 322–23.  Or it can show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof.  *Id.*

If the moving party meets its burden, the non-movant must then designate, by affidavits, depositions, admissions, or answers to interrogatories, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his or her favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Thus, summary judgment requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Indeed, a plaintiff must present evidence demonstrating that he can establish the basic elements of his claim, *Celotex,* 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the non-movant's evidence. *Anderson*, 477 U.S. at 255. It also must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine dispute of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## V. DISCUSSION

Warren invokes the doctrine of qualified immunity to shield him from Gwathney's individual capacity excessive force claim. Qualified immunity protects government officials from the chilling effect that the fear of personal liability would create in carrying out their discretionary duties. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To this end, it immunizes from suit "all but the plainly incompetent or one who is knowingly violating the

federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

However, in the Eleventh Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court's decisions in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Thus, the only inquiry this Court must make is whether Gwathney has presented sufficient evidence to survive summary judgment on his Eighth Amendment claim. *See id.*; *Dobbins v. Giles*, 451 Fed. App'x 849, 851 (11th Cir. 2012) ("[W]hen a plaintiff making an excessive force claim has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment . . . he has necessarily established the two prongs required to defeat a defense of qualified immunity." (internal quotation omitted)).

The Eighth Amendment's ban on cruel and unusual punishments governs correctional officers' use of force against prison inmates. *Whitley*, 475 U.S. at 327 (1986). Gwathney's excessive force claim against Officer Warren must be analyzed under the standard set forth by the United States Supreme Court in *Whitley*, 475 U.S. 312 (1986), and *Hudson*, 503 U.S. 1 (1992).[5] Under that standard, "force is deemed legitimate in a custodial setting as long as

---

[5] In *Hudson*, the Supreme Court extended *Whitley*'s holding beyond the prison-riot context to force used as a preventative measure. *Hudson*, 503 U.S. at 6–7 ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* . . . ."); *see also Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) ("*Hudson* dictates that *Whitley*'s standard . . . applies to all claims that prison officials used excessive force against convicted prisoners.").

6

it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich*, 280 F.3d at 1301 (quoting *Whitley*, 475 U.S. at 320–21). This standard requires that a plaintiff prove that the defendant acted with the requisite intent—that the "force [used] was applied . . . maliciously and sadistically for the very purpose of causing harm." *Campbell*, 169 F.3d at 1374 (quoting *Whitley*, 475 U.S. at 320–21). This stringent, subjective requirement reflects the Supreme Court's concern that correctional officers be given broad deference to enable them to "act quickly and decisively" when they are faced with prison disturbances, so that they may "preserve internal order and discipline and . . . maintain institutional security." *Hudson*, 503 U.S. at 6 (internal citations and quotation marks omitted).

With this concern in mind, the Supreme Court set forth a list of factors that should be considered when evaluating whether the force used was excessive and in violation of the Eighth Amendment. Those factors are: (1) "the extent of the injury";[6] (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them"; and (5) "any efforts to temper the severity of a forceful response." *Campbell*, 169 F.3d at 1375 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted); *see also Skrtich*, 280 F.3d at 1300. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a

---

[6] Although the Supreme Court has clarified that the purpose of *Hudson* was to shift the core judicial inquiry from the extent of the injury to the nature of the force, the Court has nevertheless stated that the extent of the injury is "one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010).

7

reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Campbell*, 169 F.3d at 1375 (quoting *Whitley*, 475 U.S. at 322).

Applying the foregoing legal standard and factors to the facts of this case, the Court concludes that the evidence simply does not support the reasonable inference that Warren maliciously or sadistically inflicted pain on Gwathney while conducting the pat-down search. Even taking the facts Gwathney has alleged in the light most favorable to him, as the Court must, the Court finds that Gwathney has presented no substantial evidence that Warren conducted the pat-down search in a malicious or sadistic manner for the purpose of causing harm, rather than for the purpose of maintaining discipline and institutional security. *See Hudson*, 503 U.S. at 7 ("[P]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and *to maintain institutional security*.") (emphasis added).

It is undisputed that, when Warren entered Gwathney's cubicle, he observed Gwathney rise from his bunk, turn, and place his hand down the front of his pants, a movement that typically signals an inmate is trying to conceal an object. It is further undisputed that Gwathney was facing away from Warren when Warren began the pat-down and thus, Gwathney could not observe any expression or movement that would suggest Warren had any malicious motive in touching his shoulders. Indeed, Gwathney testified that he did not know whether Warren's hands were in a fist or how Warren manipulated his hands after he started touching Gwathney's shoulders, because Gwathney immediately went to the ground in pain. (Doc. #75-2, 157:14–158:16.)

8

Gwathney presents only two pieces of evidence that would remotely support the assertion that Warren acted maliciously and sadistically in applying pressure to Gwathney's right shoulder during the pat-down search. The first is Gwathney's characterization of the extent of Warren's force as Warren "slamming" his hands down on Gwathney's shoulders after Gwathney informed Warren of his recent shoulder surgery. After considering the cited portions of Gwathney's April 18, 2012 deposition, however, the Court is not convinced that Gwathney's description of the nature of the force reflects any sadistic intent on the part of Warren. The only reasonable inference to be drawn from this fact is that Warren did not believe that Gwathney was being truthful about his medical state. Warren's disbelief in the circumstances is warranted by the fact, which Gwathney does not dispute, that Warren had observed Gwathney turn away from him and place his hand down the front of his pants when Warren entered Gwathney's cubicle. (Warren Decl. ¶ 4, Doc. #75-3.)[7] As previously noted, this movement would lead a reasonable prison official in the circumstances to believe that Gwathney was in the process of hiding contraband.

The second piece of evidence Gwathney offers to demonstrate Warren's malicious or sadistic intent in conducting the pat-down search is Warren's statement to Gwathney, "[o]h, you still can't raise your arm" immediately after Gwathney fell to his knees. However, the Court finds that nothing in this statement indicates Warren was acting with malice for the sole purpose of inflicting pain on Warren. This statement demonstrates nothing about

---

[7] Gwathney himself acknowledged the possibility that Warren did not believe Gwathney's assertion about his shoulder. As he was being treated in the medical wing immediately after the pat-down search, Gwathney remarked to PA McNeil that Warren must have "thought that [Gwathney] was playing" when Warren proceeded to pat down his shoulders after Gwathney informed him of his recent shoulder surgery. (Doc. #1-2.)

9

Warren's intent as he was conducting the pat-down search; it supports only the inference that Warren still did not believe Gwathney's assertion about his recent shoulder surgery given Gwathney's movements and actions when Warren entered the cubicle. Indeed, when Warren saw the post-surgery bandage on Gwathney's shoulder as Gwathney was removing his undershirt during the strip search, Warren tempered the amount of force he had been using up to that point by advising Gwathney that he did not have to continue the strip search. Taking the facts in the light most favorable to Plaintiff, the Court concludes that Gwathney has not presented sufficient evidence of Warren's malicious or sadistic intent for his Eighth Amendment excessive force claim to survive summary judgment.

## VI. Conclusion

After an independent review of the file, including the excerpts from the April 18, 2012 deposition of Plaintiff to which Defendant has directed the Court, and careful consideration of Defendant's objection, Plaintiff's response, the applicable law, and the record as a whole, it is hereby ORDERED that:

1. The Objection to the Recommendation (Doc. #100), filed by Defendant on January 22, 2013, is SUSTAINED;

2. The Recommendation of the Magistrate Judge (Doc. #92) is REJECTED; and

3. Defendant's renewed Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. #75) is GRANTED.

A final judgment in this case is forthcoming.

DONE this the 19th day of March, 2013.

        /s/ Mark E. Fuller
    UNITED STATES DISTRICT JUDGE